UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x

UNITED STATES OF AMERICA,                98 CR 737 (KMW)

               Plaintiff,

  -against-                                ORDER

VITAUTUS KILTINIVICHIOUS,

               Defendant.
---------------------------------x

WOOD, D.J.:

      On June 1, 2005, the Second Circuit Court of Appeals remanded this case for consideration of whether to re-sentence defendant, "in conformity with the currently applicable statutory requirements explicated in the <u>Crosby</u> opinion." Having now considered the currently applicable statutory requirements, the Court concludes that the same sentence previously imposed is still the appropriate one. There is therefore no need to re-sentence Defendant.

      Defendant has raised three issues relevant to the calculation of Defendant's advisory sentencing guidelines range, and has addressed considerations for the Court to consider pursuant to 18 U.S.C. §3553.

**<u>Sentencing Guildelines Issues</u>**

      First, Defendant argues that the harm to Eugene Chekh ("Chekh") warrants only a two-point enhancement, rather than the four-point enhancement adopted by the Court, based on Chekh

having suffered only "bodily injury" rather than "serious bodily injury" (only a finding of "serious bodily injury" would support a four-point enhancement).

Second, the Defendant argues that although the Brigade inflicted "serious bodily injury" on another individual, Edouard Simikian ("Simikian"), as described in the Presentence Report at ¶105, the injury was not caused by "relevant conduct," as defined by U.S.S.G. §1B1.3.

Third, Defendant argues that the four-point enhancement for the Brigade's "abduction" of Chekh should not apply, claiming that he was not forced to accompany his attackers (Brigade members) "to a different location," as required by U.S.S.G. §1B1 cmt. 1(a).

    a.    <u>Extent of Bodily Insury Inflicted by Defendant and his Co-conspirators</u>

        1.    <u>Extent of Chekh's Injury</u>

Chekh was injured in an attack by two members of the Brigade. The bodily injury that he suffered was limited to a dislocated shoulder that occurred when an attacker threw him to the ground. Further injury was attempted, but was unsuccessful (one attacker attempted to place a plastic bag over Chekh's head). The Court accepts Defendant's argument that Chekh suffered only "bodily injury," not "serious bodily injury," and thus that only a two-point enhancement would be warranted for this conduct.

2. <u>Whether the Injury to Edouard Simikian was "Relevant Conduct" by Defendant</u>

The attack on Simikian occurred in late February 1998, when Samvel Bozaunts ("Bozaunts") and four other Brigade members came to Simikian's apartment in Florida and assaulted him, breaking his jaw.

The attack occurred at a time when Simikian still owed extortion payments to the Brigade. Before Simikian moved to Florida in January 1998, he had made two extortion payments to the Brigade. He was then told by a Brigade member that he would have to pay additional extortion money before he moved to Florida (Trial Tr. 1248). Simikian did not pay that money.

Defense counsel argues that this assault was not in furtherance of any jointly undertaken criminal activity between Defendant and Bozaunts and/or the Brigade, and could not have been foreseen by Defendant. In support of this argument, Defendant contends Defendant was no longer a part of the conspiracy at the time of this assault, relying on Defendant's testimony and the fact that Defendant's agency was defunct, which he contends ended the conspiracy to eliminate competition among agencies. However, as the Government points out, the Brigade's conspiracy to demand extortionate fees continued beyond February 1998, and there is no evidence (other than Defendant's testimony, which the Court finds incredible on this point) that Defendant had withdrawn from the conspiracy as of the time of the Simikian

3

assault.  The Court found at sentencing that Defendant was aware of the violent nature of the Brigade, and that certain violent attacks by its members were reasonably foreseeable to Defendant (September 8, 2003 Tr. of Sentencing, at 28).  For the same reasons, the Court finds that the February 1998 attack on Simikian was reasonably foreseeable to Defendant.  The Court acknowledges that Simikian testified that he and Defendant were friendly with one another in Florida, but the Court finds that that fact does not negate the fact that Defendant and his co-conspirators continued to extort money from Simikian by means of the attack in February 1998.

The Court thus finds that Defendant was responsible for the serious bodily injury to Simikian, warranting a four-level enhancement, which makes moot the categorization of the injury to Chekh.[1]

3. Whether an "Abduction" Occurred

Defendant argues that Chekh was not "abducted," claiming that Chekh was not moved to another location.

The Government responds that the trial transcript shows not only that Chekh was forced to accompany his attackers to a different location, but also that the abduction of another individual, Arthur Lembirskiy ("Lembirskiy"), by Brigade members,

---

[1]The Court notes that if the assault on Simikian were not deemed "relevant conduct," the Court would impose a two point enhancement based on the bodily injury suffered by Chekh.

4

supports the enhancement.  For the reasons set forth in footnote 2, the Court does not find that Chekh was abducted.[2]

The Court first considers whether Lembirskiy was abducted.  Lembirskiy testified, credibly, that members of the Brigade came into his bus, which was parked in a parking lot of a club in New Jersey, and pushed him to the floor; next, the man who hit him "first"  "got behind the wheel, started the engine, and he drove me to a dark place near that bar," "a darker place from that parking lot."  (Tr. 1359-1361).  Defendant's attackers

---

[2]The Court does not find that Chekh was abducted.  Chekh's trial testimony was that (1) he was attacked when he was parked near the Nardones bar in New Jersey (Trial Tr. 1151); (2) the bar was on his left (id. 1151); (3) during the attack, one of the two drivers was sitting behind the wheel of Chekh's bus(id. 1153); (4) that his bus did not move during the attack (id. 1154); (5) that after the attackers left, he heard them puncture two tires (id.); and (6) that after the attackers left in their car, Chekh "drove to the same bar where [he] started," "with [his] two flat tires" (Id. 1154).

The government cites ¶62 of Kiltinivichious' Presentence Report, which states that Chekh was taken to another neighborhood by his attackers; the Court finds no support for this statement in the record.  Rather, Chekh testified that his bus did not move during the attack (Trial Tr. 1153).  That the attackers left the bus after the attack telling Chekh to count to 300 before he got up.  They then punctured 2 of the bus's tires, and left in a car (id. 1154).

The Government also argues that Chekh drove to the bar where he started, and that that that driving would not have been necessary had he not been taken to another location.  The Court finds Chekh's testimony too unclear for the Court fo find that he was moved from one location to another by his attackers. His testimony is that he was attacked when he was parked to the left of the bar, and that he later drove "to" the bar.  The latter could have been a short drive, from his parking spot to the bar itself, which seems likely given that the bus had two flat tires at the time.

5

moved Lembirskiy to another location from where he was parked initially and the attackers then took the keys to his bus, directed him to stop working, and left (Tr. 1359, 1361). The Brigade members' conduct with respect to Lembirskiy was thus "abduction" pursuant to U.S.S.G. §1B1.1 cmt. 1(a). This conduct warrants a four-point enhancement.

        b.    <u>Consideration of Factors Cited In 18 U.S.C. §3553</u>

Defendant argues that pursuant to 18 U.S.C. §3553, the Court should consider the facts that (1) Defendant will be deported to Lithuania, twenty-five years after he left that country; (2) Defendant is unlikely to be eligible for the Bureau of Prisons' early release programs, minimum security confinement and work or home release options available to inmates who are not deportable; (3) a sentence of less than fifteen years will be adequate to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense and deterrence, and will protect the public from further crimes by Defendant; and (4) an unwarranted disparity results from the fact that several of Defendant's co-defendants received lower sentences than Defendant, notwithstanding their commission of violent acts.

In sentencing Defendant previously, the Court considered the same factors as those listed in §3553, except that the Court did not consider whether imposing a fifteen-year

6

sentence on Defendant would create unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct. Specifically, the Court considered that Defendant: will be deported, and will return to Lithuania long after he left that country; is likely to be afforded fewer options by the Bureau of Prisons; and the fact that a sentence of fifteen years in custody is required to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and promote deterrence. Although the weight to be afforded shifted slightly post-Booker; Crosby, the Court is persuaded that, in this case, the sentence previously imposed affords these factors adequate import in light of the Court's new mandate to sentence pursuant to §3553.

Considering the advisory sentencing guidelines along with the §3553 factors, the Court would re-sentences Defendant to the same sentence previously imposed. This same sentence would be imposed, whether Defendant's advisory sentencing guideline level is calculated to be a total offense level of 34 or a total offense level of 36. That is, the same sentence would be imposed even if the Court excludes consideration of the Simikian assault (and thus adds only two points, for the bodily injury to Chekh), rather than four points, for the "serious bodily injury" to Simikian). The sentencing

7

guidelines range that would result from adding only a two-point enhancement, for "bodily injury" (151-188 months), allows (at the top of the range) for the same sentence (188 months) as Defendant received. Given the extent of Defendant's criminal conduct, the violent nature of the conspiracy, and Defendant's obstruction of justice, the sentence of 188 months is appropriate pursuant to §3553, regardless of whether the advisory sentencing guidelines would set Defendant's total offense level at offense level 34 or offense level 36.

**Conclusion**

For the reasons stated above, the Court concludes there is no need to re-sentence Defendant, and Defendant thus receives the same sentence as previously imposed.

SO ORDERED.


DATED: February 10, 2006
New York, N.Y.

_____
KIMBA M. WOOD
United States District Judge